Rockingham, }
April 7, 1925. }

### ETHYL C. KENNARD *v.* REGINALD P. KENNARD.

A remainder to take effect upon the decease of another is a vested remainder, liable to be divested by the decease of the remainder-man before the life tenant, and may be assigned by the remainder-man.

The award of alimony is within the sound discretion of the trial court, and will not be disturbed unless it is clear and certain that it is unjust under all the circumstances.

The same rule obtains as to an award for the support of the children of the parties.

The conduct of the husband toward the wife is a matter to be considered in determining the amount of alimony; if his conduct has been reprehensible, the amount of alimony awarded the wife may be augmented.

The award is not necessarily unreasonable simply because it is more than the libelee is actually earning at the time, if his ability and education are such as to make it reasonably probable that he can earn enough to support himself and comply with the order.

LIBEL FOR DIVORCE, with prayer for custody of minor child and for allowance of alimony. The libelant's grounds for divorce were extreme cruelty and treatment seriously injuring health.

A divorce was decreed to the libelant for extreme cruelty.

The care, custody, education and earnings of the minor son, Reginald D. Kennard, were committed to the libelant and William E. Marvin of Portsmouth. It was further decreed as follows: "The libelee is ordered to pay the libelant fifty dollars per month on the last week-day of each month toward the temporary support of said child. Further alimony is decreed to the libelant in the sum of sixty thousand dollars, and the libelee is ordered to forthwith secure the same by making an assignment to said William E. Marvin, trustee, and his successors, of his interest under the will of William Schaus, to the amount of sixty thousand dollars, without interest thereon, payable when the trustees under said Schaus will have available funds."

By the will of William Schaus, the grandfather of the libelee, duly probated in New York, a trust fund was created, now amounting to about three hundred and fifty thousand dollars, in the hands of trustees, who are at present the Farmers Loan and Trust Company of New York City, to pay the income, increase and profits thereof to Wilhelmina S. Kennard during her life, and upon her death leaving issue, to pay over said trust funds to her issue, to take, share and share alike, *per stirpes* and not *per capita.* Wilhelmina S. Kennard is liv-

ing, and is the mother of three children, of whom the libelee is one, and all of whom are living. The libelee has no present ability to pay the sixty thousand dollars alimony, and his only future means of paying it is his interest in the Schaus will. October 23, 1923, the libelee executed to William E. Marvin, trustee, an assignment in accordance with the above order, and then excepted to the order and to the involuntary assignment which he had made. The libelee also excepted to the order of the court that the libelee pay a temporary allowance for the support of the child, of fifty dollars per month, on the ground that there was no evidence of any present pecuniary ability to pay such a sum, and to the order of the court requiring the libelee to execute an assignment out of his contingent future estate to a trustee of the libelant, on the ground that this estate is not property subject to a present order for alimony.

Transferred by *Sawyer*, J.

*Marvin, Batchelder & Peyser* and *Scammon & Gardner* (*Mr. Scammon* orally), for the libelant.

*Snow & Cooper* (*Mr. Snow* orally), for the libelee.

PLUMMER, J. The original divorce statute in this state was enacted in 1791. Prior to that time divorces were granted by the legislature. This act contained the following provision in relation to alimony: "The justices of the superior court of judicature may in all cases where a divorce is decreed . . . assign to the wife such part of the real and personal estate of her late husband as all circumstances duly considered they may think just and reasonable." 5 N. H. Laws (Reprint) 733. *C.* 148, *s.* 13 of our Revised Statutes provides that the court "may assign to her such part of the real and personal estate of her husband, or order him to pay such sum of money, as may be deemed just and expedient." The present statute of this state is the same as that of the Revised Statutes except it does not contain the words "and expedient," but is that the court "may assign to her such part of the estate of her husband, or order him to pay such sum of money, as may be deemed just." P. S., *c.* 175, *s.* 14.

The statutes enacted relating to alimony indicate that it was the intention of the legislature to confer upon the courts comprehensive powers and broad discretion in relation to that subject, and these statutes have been so construed by the court. "The decision of all causes of divorce and alimony is given to this court by the constitu-

tion; and the statute regulating the whole matter confers upon the court the most ample powers.  Constitution of N. H., part 2, *s.* 76; Rev. Stat., chap. 148.  The section of the statute which applies particularly to the question before us is as follows: 'Upon any decree of nullity or divorce, the court may restore to the wife all or any part of her lands, tenements and hereditaments, and may assign to her such part of the real and personal estate of her husband, or order him to pay such sum of money, as may be deemed just and expedient; . . .' Rev. Stat., chap. 148, s. 13.  Several other sections are to be found in the same chapter, showing that it was the intention of the Legislature that the court should exercise a very broad discretion in relation to the whole subject; that they should, as was expressed in the act of 1791, do what they may think just and reasonable, 'all circumstances duly considered.'"  *Sheafe* v. *Sheafe*, 24 N. H. 564, 567; *Whittier* v. *Whittier*, 31 N. H. 452, 458.

The award of alimony is within the sound discretion of the trial court.  19 C. J. 249, and cases there cited.

It is true that this discretion is not arbitrary and can be revised. But under the statute and practice in this state, the award made by the court will not be disturbed unless it is clear and certain that it is unjust under all the circumstances.

The libelee excepted to the involuntary assignment made by him to a trustee of his wife of his interest in the trust fund created by his grandfather's will, on the ground that his interest therein is not property subject to a present order for alimony.

The contention of the libelee that his interest in the trust fund is a contingent and not a vested remainder, and consequently could not be transferred or alienated, is based upon the fact that if he should predecease his mother, who holds the life estate, then he would not inherit the trust fund.  Under the decisions of the court in this state, the libelee takes a vested remainder, which may be divested by his decease before that of the life tenant.  *Parker* v. *Ross,* 69 N. H. 213; *Dana* v. *Sanborn,* 70 N. H. 152.

As the interest of the libelee in the trust is a vested remainder, a valid assignment of it can be made by him.  *Glidden* v. *Blodgett,* 38 N. H. 74; 16 Cyc. 652.  The conclusion is that the assignment made by the libelee to the trustee of the libelant by the order of the court of a certain portion of his interest in the trust fund is valid, and that the making of the order for such an assignment was clearly within the power of the court, and was not an abuse of the discretion conferred upon it by the statute which provides that the

court may assign to the wife as alimony such part of the estate of her husband as may be deemed just.

If it could be held that the position of the libelee is correct, namely, that his interest in the fund cannot be assigned under the order of the court, then he has no reason for complaint, because the assignment would be inoperative, a mere nullity, and could not prejudice him. *Sheafe* v. *Laighton,* 36 N. H. 240, 245.

The claim of the libelee that the decree should be annulled because when funds are available so that payment can be made to the trustee of the libelant the situation may be such as to render the order unjust, furnishes no adequate reason for the abrogation of the decree, for if such a condition should occur, upon petition to the court the order may be set aside or modified. *Wallace* v. *Wallace,* 74 N. H. 256. Whether the interest of the libelee in this trust fund is to be controlled and administered according to the laws of New York is a question which has not been presented or considered.

The libelee under his general exception to the order for alimony urges that the amount awarded to the libelant by the court is excessive, and that the decree should be set aside.

Under the statute the court may decree such an amount "as may be deemed just." The amount to be awarded is very largely within the discretion of the trial court, and a decree made will not be set aside unless it is distinctly evident and manifest that the court's discretion has been abused. If upon the evidence it can be found that the award was not unjust, then the order will not be annulled or modified. This is the general rule adopted by courts in this country under statutes similar to that in this state. *Powell* v. *Powell,* 53 Ind. 513; *Logan* v. *Logan,* 90 Ind. 107; *Miller* v. *Miller,* 97 Kan. 704; *Deeds* v. *Deeds,* 108 Kan. 770; *Silva* v. *Silva,* 81 Okl. 159; *Boles* v. *Boles,* 60 Mont. 411; *Cassan* v. *Cassan,* 27 N. Mex. 256; *Miller* v. *Miller,* 89 Vt. 547. Many cases might be cited in which the court decreed to the wife as alimony a moiety of the husband's estate, and in some instances the courts have awarded as alimony the entire estate of the husband. But the decisions in these causes would be of little or no value in determining the question here presented. Every case of this character depends upon its own peculiar facts and circumstances. And the decision in this case must be based upon the surrounding circumstances and the relations which existed between these parties. The conduct of the husband towards the wife is a matter to be considered in determining the amount of alimony. *Janvrin* v. *Janvrin,* 59 N. H. 23. If the husband's conduct has been

reprehensible, then this will augment the amount of alimony that should be awarded to the wife. *Gussman* v. *Gussman,* 140 Ind. 433; *Johnston* v. *Johnston,* 180 Ky. 439; *Glaser* v. *Kaiser,* 103 Minn. 241; *Burr* v. *Burr,* 7 Hill (N. Y.) 207; *Hildebrand* v. *Hildebrand,* 41 Okl. 306; *Pauly* v. *Pauly,* 69 Wis. 419.

The libelee was guilty of extreme cruelty towards the libelant. And in addition to that, it can be deduced from the evidence that the libelee has been guilty of other acts of culpable conduct in the treatment of his wife. These parties were married September 15, 1917. At that time the libelee was in the United States Army. He was discharged in August, 1919. In January, 1920, he took his wife from New York, where she had been residing, to Greenland in this state, where he boarded her at two farms until April 29, 1920, when he removed her to a farm which his mother had purchased in Greenland. She lived there until they were separated August 20, 1920.

It could be found from the evidence that from the time of the libelee's discharge from the army until their separation in August, 1920, he neglected and ill-treated the libelant; that while she was boarding with her young child at the farms in Greenland he only came to see her once in two or three weeks, and then only stayed a short time, although he was living with his mother on a farm in Greenland; that in the house upon the farm where he took her and their child April 29, 1920, there was very little furniture, and she was compelled to buy some herself in order to live there; that during all the time she lived at that place her husband took no meals with her, and would not come to the house until evening; that one night he went away, and she left the house unlocked expecting him to return, but he did not come back, and she was compelled to stay alone with her child all night in that isolated farmhouse; that he took her to no places of amusement or entertainment; that he was continually trying to take her child from her; and that finally he ordered her from the house, and informed her he would expel her by force if necessary.

From these evidentiary facts, together with other acts of neglect and ill-treatment which could be inferred from the evidence, it could be found that it was the design and purpose of the libelee to break the spirit and courage of his wife and compel her to leave him. He was successful in this undertaking. But he was justly required by the court to make a liberal allowance of alimony to his wife, as a recompense in some degree for the neglect and ill-treatment which, it could be found, she had endured at his hands. "Equity and good

conscience require that the husband shall not profit by his own wrong in forcing his wife to divorce him." 1 R. C. L. 931.

Under all the circumstances surrounding this case as disclosed by the evidence, it cannot be held, as a matter of law, that the allowance of alimony decreed by the court was an abuse of his judicial discretion. As said in *Danielson* v. *Danielson*, 99 Kan. 222, 226: "The question here is not simply whether or not the district court was too liberal in its allowance to the defendant, but whether or not the division was so manifestly inequitable and unjust that this court should interfere." The libelee's exception to the order of the court that he pay for the support of his child fifty dollars per month is based on the ground that there was no evidence of any present pecuniary ability to pay such a sum. The statute provides that "in all cases where there shall be a decree of divorce or nullity, the court shall make such further decree in relation to the maintenance, education, and custody of the children as shall be most conducive to their benefit, and may order a reasonable provision for their support to be made by the guilty party, or out of his estate." P. S., c. 175, s. 13.

"The power of the court in divorce proceedings as to alimony, custody and support of children is wholly statutory." *Salta* v. *Salta*, 80 N. H. 218. Under the statute the ground of the libelee's objection to the order of the court must be that in view of his pecuniary inability to comply with the order, it is unreasonable. The award of an allowance in divorce proceedings for the support of a child is very much within the discretion of the trial court, the same as an order for alimony, and what has been said heretofore upon that subject as to the discretion of the court has equal application here. The order will not be set aside or modified unless upon the evidence it clearly appears that there has been an abuse of judicial discretion. If it can be found upon the evidence that it is not unreasonable to require the libelee to pay fifty dollars a month for the support of his child, then the decree of the court will not be disturbed.

The following facts can be found upon the evidence: The libelee is a young man about thirty-five years of age, of good education. Previous to his marriage and until he enlisted in the army he occupied a position in a business enterprise in Cleveland, Ohio, in which he was interested, and from which he received a salary of one hundred and fifty dollars per month. After he entered the army, this business was closed up and disposed of by his brother, and the portion due the libelee, including back salary, amounting in all to twenty-seven hundred and sixty dollars, was invested for him by his brother in war

finance corporation certificates. There was also belonging to the libelee some office equipment valued at two hundred and fifty dollars that was put in storage for him. After the libelee was discharged from the government service, he and his brother took charge of two farms which his mother had purchased in Greenland. Under an agreement between them and their mother, each of them received for carrying on the farms fifty dollars a month and all the income which the farms produced. The conduct and manner of life of the libelee indicate that he is a man of means. From these findings of facts, warranted by the evidence, it would seem that the libelee, in his present position, ought to support himself and contribute twelve dollars and fifty cents per week to the support of his child. But if he cannot do so in his present occupation, it certainly would not be an unreasonable conclusion that a young man of his education should be capable of obtaining a position which would enable him to comply with the order of the court. The income from the three thousand dollars received by him from his business, applied to the allowance ordered for the support of his child, should reduce the amount which the libelee would have to provide to about nine dollars per week. It is not unreasonable to presume that a young man of his capabilities could earn that amount in addition to supporting himself.

Pending the divorce proceedings the libelee voluntarily agreed to pay fifty dollars a month to his wife. It would not seem probable that he would have obligated himself to pay that amount unless he was able and had the means to do so. And so far as appears his situation was the same then as now. The libelee urges that fifty dollars a month is in excess of the reasonable needs of a young child. In view of the present cost of living, this objection would not seem to demand much consideration. Certainly it would not furnish a ground for setting aside the order for the allowance because it was unreasonable.

It cannot be held that the order for the support of the child was an abuse of the court's discretion.

*Exceptions overruled.*

SNOW, J., did not sit: the others concurred.